# UNITED STATES DISTRICT COURT FOR THE
# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| New London Associates, LLC, <br><br>                          Plaintiff, <br><br>    v. <br><br> Kinetic Social LLC, <br> Spectrum Media Services, LLC, <br> Internap Corp., <br> Western Alliance Bancorporation d/b/a Bridge Bank, <br> Costella Kirsch, <br> Blue Chip Venture Company Ltd., <br> Blue Chip VI Extension Fund II LLC, and <br> Multiplier Capital LP <br><br>                       Defendants. | Case No. 1:18-cv-7963 |

### NEW LONDON ASSOCIATES LLC'S OPPOSITION TO
### COSTELLA KIRSCH'S MOTION TO DISMISS (DKT. 112)

TABLE OF CONTENTS

I.    INTRODUCTION & FACTS .......................................................... 1

II.   CK'S INCORPORATION BY REFERENCE IS IMPROPER ................... 1

III.  NLA PLEADS ACTIONABLE COPYRIGHT CLAIMS ........................... 3

    A.   CK Directly Infringed NLA's Copyrights .................................................... 3
    B.   CK Contributed to the Infringement of NLA's Copyrights ................... 6
    C.   INAP Is Liable for Spectrum's Infringement vicariously and per
         Respondeat Superior ........................................................................................ 7
    D.   NLA Is Entitled to Damages, Attorneys' Fees And Other Relief ........... 8

IV.   NLA PLEADS ACTIONABLE NON-COPYRIGHT CLAIMS ................. 9

    A.   NLA's Conversion Claim Against CK is Withdrawn.................................... 9
    B.   Count 6 (Tortious Interference) is Sufficiently Plead ........................... 9

V.    CONCLUSION ............................................................................ 10

TABLE OF AUTHORITIES

<u>Cases</u>

*Larren v. Santo Domingo*,
    2018 NY Slip Op. 30162(U) (N.Y. Sup. Ct. 1st Dept. 2018)......................................10

*MGM Studios Inc. v. Grokster, Ltd.*,
    545 U.S. 913 (2005) ...................................................................................................7

*Nissan Motor Acceptance Corp. v. Dealmaker Nissan, LLC*,
    2012 U.S. Dist. LEXIS 89737 (N.D.N.Y. June 27, 2012) ............................................1

*Thome v. Alexander & Louisa Calder Found.*,
    70 A.D.3d 88 (2009).................................................................................................10

*Topliff v. Wal-Mart Stores E. LP*,
    2007 U.S. Dist. LEXIS 20533 (N.D.N.Y March 22, 2007) ..........................................2

*UMG Recording v. Escape Media Grp.*,
    2014 U.S. Dist. LEXIS 137491 (S.D.N.Y. 2014) ........................................................7

<u>Statutes & Rules</u>

17 U.S.C. 412 ...................................................................................................................9

## I.      Introduction & Facts

Plaintiff NEW LONDON ASSOCIATES, LLC ("NLA") is a New York based software developer.  As pled in its Second Amended Complaint (hereafter, the "Complaint" or "Compl."), COSTELLA KIRSCH ("CK") is a partnership that invested in NLA's customers Twelvefold and Kinetic and, through the control that said investments created over NLA's customers, infringed NLA's copyrights, converted NLA's property, and interfered with NLA's existing business relationships.

Despite contrary language in the agreements cited by CK in its brief, in order to attempt to profit from those investments, CK directed NLA's customers to transfer NLA's RTR copyrighted work product to Kinetic.  This transfer was an infringement of NLA's copyrights, a conversion of NLA's property, and an interference with NLA's existing business relationships.

## II.     CK's Incorporation by Reference is Improper

As an initial matter, the structure of CK's briefing makes it nearly impossible to adequately respond.  Rather than brief their arguments, CK attempts to incorporate by reference its briefing on its prior Motion to Dismiss (Dkt. 83)—which in not based on the current Complaint—and also Bridge Bank's briefing in its withdrawn Motion to Dismiss (Dkt. 110).  *See* Dkt. 113 at 2-4.  Incorporating other briefing by reference is improper.  *See Nissan Motor Acceptance Corp. v. Dealmaker Nissan, LLC*, Case No. 7:09-CV-0196 (GTS/ATB), 2012 U.S. Dist. LEXIS 89737, at *6 n.2 (N.D.N.Y. June 27, 2012) (holding that incorporation by reference is improper because "[s]etting aside the risk that such reference could cause the referring

document to violate the District's rule on page limitations . . . , such a practice also risks causing the opposing party to inadvertently overlook the attempted incorporation, and risks confusing the Court as to which 'incorporated' arguments are actually being relied upon"); *see also Topliff v. Wal-Mart Stores E. LP*, Case No. 6:04-CV-0297 (GHL), 2007 U.S. Dist. LEXIS 20533, at *38 n.65 (N.D.N.Y March 22, 2007).

Furthermore, because CK's prior briefing that it incorporates is based on a previous complaint, the paragraphs to which it refers do not correspond to allegations in the present Complaint, and many of the arguments made there are no longer relevant.  In addition, the briefs that CK claims to incorporate by reference are not consistent.  *Compare* Dkt. 83 *with* Dkt. 110.  For example, CK's prior brief substantively argues four different bases for dismissal, but Bridge Bank's withdrawn brief only argues two, which partially overlap with CKs old brief.[1]  So, is CK now asserting only the two bases argued by Bridge Bank but supplementing the argument with its prior briefing on the same arguments, or is it continuing to assert the old arguments that Bridge Bank is no longer asserting?  Thus, it is virtually impossible to respond in a coherent manner, because it is not entirely clear which arguments CK believes are even still live.  CK's Motion could be denied on this basis alone.  *See id.*

Nonetheless, NLA has endeavored in the brief to respond as thoroughly as

---

[1] As of the date of filing this brief, Bridge Bank has been dismissed from this matter and its brief(s) are withdrawn.

possible.  In the Preliminary Statement of CK's brief, it lists four arguments, which the following paragraphs seem to argue.  *See* Dkt. 113 at 2-3.  As these arguments are also the primary arguments in CK's prior brief, NLA will primarily brief these issues here.  If, however, CK asserts that NLA has failed to address an argument from an incorporated brief that CK believes to still be a live issue, NLA requests that the Court grant it leave at that time to file supplemental briefing on any issue that NLA does not address herein due to CK's inappropriate incorporation by reference.

## III.    NLA Pleads Actionable Copyright Claims

CK's motion to dismiss NLA's copyright claims must be denied, because NLA has pled actionable copyright claims.

### A.    CK Directly Infringed NLA's Copyrights

As described in the Complaint, Plaintiff owns the copyrights to RTR, they have never been assigned.  Compl. ¶13. NLA has never issued any licenses to RTR.  Compl. ¶66. The deal struck between Kinetic and NLA was not for a license or assignment of NLA's rights, rather it was for services (i.e. setup fee and equipment rental.)  Compl. ¶48.  NLA has never made or transferred any ownership interest or license to RTR or any derivatives.  Compl. ¶13, 66.

NLA never sold a copy, made an assignment, granted a license, or in any way authorized any third party—Twelvefold, Kinetic, or Spectrum—to use or access its software in perpetuity, or in any way that could be transferred to a third party.  NLA rented access to its software and servers to Twelvefold, and then to Kinetic.  Compl. ¶32, 48.  After Twelvefold and then Kinetic defaulted on their obligations to

NLA, their use of NLA's server, or software, was unauthorized.  NLA did provide access to the code of RTR, so that the users of the software (Twelvefold and then Kinetic) could better work with and configure the operation of the servers that NLA was renting to them.  But, again, as soon as Twelvefold and Kinetic defaulted on their obligations, any such use was unauthorized infringement.

CK argues that NLA has not adequately pled a claim for direct or indirect copyright infringement against CK.  Dkt. 113 at 3.  The primary argument seems to be that CK claims not to know the specific acts of which it is accused.  *See id.* at 2-3; Dkt. 83 at 7-8; Dkt. 110 at 5-7.

The Complaint, however, clearly indicates that CK is accused of exercising control over two entities that it was financing and ordering them to copy NLA's software.  *See*, *e.g.*, Compl. ¶¶ 16, 27 a-c, 35-46, 52-53, 73-74.  Not only do these paragraphs allege specific acts, they refer to specific correspondence sent between the CK and other Defendants where the alleged actions were discussed or ordered.  *See*, *e.g.*, *id.* ¶¶ 46 nn.6-8, 52.  Therefore, CK's allegations that the Complaint does "not clarify or identify the specific acts" or that they are based on "conclusory statements" or that the specific allegations against CK are not spelled out are false.  See Dkt. 113 at 2; Dkt. 83 at 7-8; Dkt. 110 at 5-7.

CK next attempts to hide behind the Twelvefold asset purchase/foreclosure sale agreement, claiming that agreement makes clear that Twelvefold could not transfer any property interest that it did not hold.  *See* Dkt. 113 at 3; Dkt. 83 at 9-10; Dkt. 110 at 7.  The problem with this argument is that the agreement to which

CK's argument refers discusses what *should* have been done, not what was *actually* done.  For example, in Dkt. 113, CK does *not* say that the product was not transferred, rather it argues that *if* Twelvefold did not hold a license, then the transfer never occurred, but if Twelvefold held a license, then the copyright was not violated by the transfer.  *See* Dkt. 113 at 3.  Rather than stating whether or not the product was transferred, CK attempts to speculate about the issue.  Said differently, CK is not accused of poor contract drafting, rather CK is accused of being part of a scheme that actually resulted in copyright violations and other harms to NLA.  Whether, as CK alleges, that was contrary to the language in various contract(s) is beside the point.

Moreover, the emails cited by the Complaint, and provided in NLA's supporting declaration, reveal what actually happened.  Despite any language in any agreement between the various Defendants, on May 26, 2016, CK's Richard Ginn approved the transfer of the RTR product to an escrow agent for transfer to Kinetic upon closing of the deal being brokered.  *See* Compl. ¶ 46 n.8; *see also* Simon Decl. (Dkt. 125) ¶ 6 and Ex. D (Dkt. 125-4) at 40-43.  At no point did Mr. Ginn refer to the exclusion clause or engage in any of the semantic acrobatics now argued in CK's brief.

In addition, it is clear that the RTR product was not seen as falling under the exclusion clause cited by CK, because in the same email chain Blue Chip's Chris McCleary described application as a "critical asset."  *See id.*

Thus, despite CK's arguments to the contrary, it is clear from the Complaint

and the documents cited therein what specific acts CK is accused of having performed to infringe NLA's copyright.  CK's motion to dismiss the direct infringement claims should be denied.

### B.     CK Contributed to the Infringement of NLA's Copyrights

CK's original briefing also took issue with the specificity of the pleading of NLA's contributory infringement and conspiracy causes of action.  *See* Dkt. 83 at 8, 10-13.  These arguments do not appear to be contained in either CK's current brief or Bridge Bank's current brief.  See Dkt. 113 at 2-3; Dkt. 110 at 5-7.  Unfortunately, however, because of CK's improper incorporation by reference, it is impossible to tell whether these arguments are still being asserted.  NLA will briefly address them here out of an abundance of caution, but NLA requests that it be allowed to flesh out its briefing if CK later clarify or expands upon its arguments.

One of the arguments of CK's earlier brief is that a contributory copyright infringement claim "requires that the defendant had knowledge of the infringing activity and actively induces, causes, or materially contributed to that activity." Dkt. 83 at 12.  These facts have been adequately pled.  *See, e.g.*, Compl. ¶¶ 35-46, 77-78, 82-83.  If the pled allegations leave any doubt regarding CK's knowledge and inducement of the infringement, that doubt is dispelled by the correspondence cited in the Complaint and the contemporaneously filed declaration.  *See* Compl. ¶ 46 n.8; *see also* Simon Decl. (Dkt. 125) ¶ 6 and Ex. D (Dkt. 125-4) at 40-43.  That correspondence leaves no doubt that CK knew and approved of the infringement, which was a requirement for CK to approve the deal being brokered.  The correspondence also leaves little doubt that the Defendants conspired together to

infringe NLA's copyright.

Because NLA has plead that CK had knowledge of the infringing activity, and materially contributed to the infringing conduct, CK's motion to dismiss should be denied.

### C.     INAP Is Liable for Spectrum's Infringement vicariously and per *Respondeat Superior*

CK continues to argue that it cannot be liable under *respondeat superior* or vicarious liability theories because NLA does not recite any facts establishing an employer-employee relationship or that CK controlled the infringing entities.  See Dkt. 113 at 2.  This argument is flawed.

"One infringes contributorily by intentionally inducing or encouraging direct infringement . . . and infringes vicariously by profiting from direct infringement while declining to exercise a right to top or limit it."  *MGM Studios Inc. v. Grokster, Ltd.,* 545 U.S. 913, 930 (2005).  "The first element of the test for vicarious liability is met if the plaintiff demonstrates that the defendant had the ability to supervise or control the infringing activity."  *UMG Recording v. Escape Media Group,* 2014 U.S. Dist. LEXIS 137491, at *63. (11-cv-8407, S.D.N.Y. 2014) "The second element of the vicarious infringement test requires showing a causal relationship between the infringing activity and any financial benefit that the defendant gains.  The relationship is established when the infringing material acts as a draw to attract users to a defendant's service.  '[T]he law is clear that to constitute a financial benefit, the 'draw' of infringement need not be the primary, or even a significant, draw—rather it need only be a draw."  *Id.* at 64. (internal citations omitted.)

7

In this matter, Plaintiff has sufficiently plead a claim for vicarious liability. As to the first factor, the Complaint adequately pleads that CK exercised control over the infringing entities at least through its ability to set requirements for the provision of funds to those infringing entities. *See, e.g.,* Compl. ¶¶ 35, 38, 41-46, 52, 72-74, 77-78, 82-84. The correspondence cited in the Complaint further shows that CK exercised the ability to control the actions of the infringing parties. *See* Compl. ¶ 46 n.8; *see also* Simon Decl. (Dkt. 125) ¶ 6 and Ex. D (Dkt. 125-4) at 40-43. That correspondence shows that CK exerted its control to instruct the other defendants to make an infringing copy of the RTR product and place it in escrow for transfer to an unlicensed third party.

As to the second factor, NLA has pled that CK has profited from the direct infringement. NLA pled that CK profited from the infringement through the profits and fees generated by their investments in the entities that they instructed to infringe NLA's copyrights. *See, e.g.,* Compl. ¶14, 25, 27, 74. Thus, NLA has pled the second factor, a causal relationship between the infringement and "any financial benefit" to CK.

Because NLA has established vicarious liability, CK's motion must be denied.

### D.     NLA Is Entitled to Damages, Attorneys' Fees And Other Relief

NLA has plead that it has been harmed by Defendants' conduct and is entitled to damages. Compl. ¶14. NLA has pled actual damages, profits attributable to the infringement, compensatory damages, punitive damages, attorneys' fees and costs of suit, and costs of investigation and litigation under any

applicable legal provision.  *See* Compl. At PRAYER FOR RELIEF §c-f.  NLA is still investigating the full measure of damages it has suffered.

After further consideration of the issue, NLA hereby withdraws its demand for statutory damages under 17 U.S.C. § 412.  NLA's claims for other categories of damages, however, and for attorneys' fees generally, cannot be dismissed at this stage because they are available on other grounds.

## IV.    NLA Pleads Actionable Non-Copyright Claims

### A.    NLA's Conversion Claim Against CK is Withdrawn

CK alleges that NLA's conversion claims are preempted by copyright law. Dkt. at 2 ¶ c.  Presumably, this is for the same reasons discussed in its earlier briefing.  Dkt. 83 at 15-16.  CK's argument only addresses the preemption of the conversion claim.  See Dkt. 113 at 2 ¶ c; Dkt. 83 at 15-16.

Though NLA continues to believe that CK's actions constitute conversion of NLA's property, after further consideration and in the interest of simplifying the case for discovery, NLA hereby withdraws its conversion claim against CK.

### B.    Count 6 (Tortious Interference) is Sufficiently Plead

Finally, CK continues to assert that NLA's tortious interference claim is insufficiently pled.  *See* Dkt. 113 at 2 ¶ 4; *id.* at 3.  CK's present brief, however, provides no basis for its argument.  Presumably, it is continuing to rely on its original briefing, which seems to be based entirely on the premises that NLA does not allege an existing third party business relationship or that any third party violated an existing contract.  *See* Dkt. 83 at 17.  Unfortunately for CK, these arguments related to the previous complaint and are not true of the current

Complaint.

Under New York law, a complaint for tortious interference with prospective economic advantage is sufficiently plead if it alleges that the tortfeasor is aware of actual prospective business relationships between the plaintiff and with third parties, that the tortfeasor unlawfully interfered with such relationships, and injured the plaintiff. *Thome v. Alexander & Louisa Calder Found.,* 70 A.D.3d 88, 108 (2009); *see also Larren v. Santo Domingo,* 2018 NY Slip Op. 30162(U), at \*\*14 (N.Y. Sup. Ct. 1st Dept. 2018).

The current Complaint addresses these elements and CK's old arguments cannot stand. The Complaint alleges that NLA had a business and contractual relationship with Kinetic, and that CK interfered with that relationship by causing Kinetic not to pay its contractual obligations to NLA. Compl. ¶ 94-95. CK's previous arguments related to the previous complaint are not valid against the current Complaint. The tortious interference claim is properly pled in the current Complaint. Therefore, CK's motion should be denied.

## V.   Conclusion

CK's motion should be denied in its entirety, for the reasons discussed herein.

Date: 1 February 2019                 Respectfully Submitted,

                                      */s/ Erik Dykema*

_____

                                      Erik Dykema
                                      *Of Counsel*
                                      Craig L. Uhrich
                                      *Of Counsel*
                                      **Zeller IP Group PLLC**
                                      155 Water Street
                                      Suite 6 − 6
                                      Brooklyn, New York 11201
                                      Tel. 972-920-8002
                                      erik@zellerip.com
                                      *Attorneys for Plaintiff New London*
                                      *Associates LLC*


### CERTIFICATE OF SERVICE

I hereby certify that on February 1, 2019, a true and correct copy of the above and foregoing document has been served on all counsel of record registered for electronic filing on the date indicated above via the Court's ECF system in accordance with S.D.N.Y. Local Civil Rule 5.2.

                                      */s/ Erik Dykema*
                                      Erik Dykema